# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| SAINT LAWRENCE COMMUNICATIONS LLC, § § § *Plaintiff*, § § v. § § ZTE CORP. ET AL., § § *Defendants*. § § § § | Case No. 2:15-cv-349-JRG |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Exclude Expert Testimony of Roy Weinstein Under *Daubert* (Dkt. No. 268, the "Motion") filed by Defendant Motorola Mobility LLC ("Motorola") and joined by the ZTE Defendants (Dkt. No. 280). For the following reasons, the Court is of the opinion that the Motion should be **GRANTED-IN-PART** as explained herein.

## APPLICABLE LAW

Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

"The inquiry envisioned by Rule 702 is . . . a flexible one," but, in *Daubert*, the Supreme Court held that the Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell*

*Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993). "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). At base, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

## ANALYSIS

Motorola sets forth a number of grounds to exclude the testimony of Mr. Roy Weinstein, the damages expert of Plaintiff Saint Lawrence Communications LLC ("SLC"). Specifically, Motorola argues that Mr. Weinstein (1) improperly increases his calculated royalty rate based on erroneous settlement and invalidity discounts; (2) arbitrarily determines that five cents is an appropriate amount to adjust the royalty rate as part of his *Georgia-Pacific* analysis; (3) improperly relies on Motorola's offered rates for a technology portfolio to justify an increase in the hypothetical royalty rate by five cents; (4) improperly raises the royalty rate by five cents under *Georgia-Pacific* Factor 7 to account for the increased scope and duration of the hypothetical license; and (5) improperly adjusts the hypothetical royalty rate based on SLC licenses negotiated in the context of litigation in Germany. The Court considers each ground in-turn

*First*, Motorola takes issue with Mr. Weinstein's method of accounting for litigation risks and costs. Mr. Weinstein derives a starting point for the hypothetical royalty rate from a license between Saint Lawrence and Samsung, a purported FRAND rate. From this point, he increases the hypothetical royalty to calculate the amount that Motorola might offer in the hypothetical negotiation if litigation and patent validity were not issues as they were in the Samsung negotiation. Accordingly, Mr. Weinstein looks to proposals made by LG to SLC in which the former offered a

license subject to quantify a "settlement discount" and "invalidity discount." He uses these proposals as support for his adjusting the Samsung royalty upward, accounting for a 50% "settlement discount" and a 18.25% "invalidity discount." Motorola argues that Mr. Weinstein's reliance on the two LG proposals is flawed, unreliable and not relevant to the hypothetical royalty in this case. In particular, Motorola points out that the two LG proposals substantially differ from the ultimate agreement reached by SLC and LG, almost by a factor of ten. In other words, the LG proposed settlement and invalidity discounts used by Mr. Weinstein to adjust the Samsung royalty do not reflect any actual settlement or invalidity discounts provided to LG and ultimately agreed to by SLC.

In light of these facts, Mr. Weinstein's reliance on the LG proposals is not excludable. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("The trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system . . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits") (internal quotations omitted). In principle, experts may increase royalty rates derived from prior licenses to account for discounts attributable to litigation risks and costs. Motorola's disagreement primarily lies not with Mr. Weinstein's methodology but with the inputs Mr. Weinstein uses. In fact, the sources Mr. Weinstein uses to justify these inputs is transparent. In other words, Mr. Weinstein's methodology is "not so opaque as to be immune from rigorous cross-examination, the 'traditional and appropriate means of attacking shaky but admissible evidence.'" *PerdiemCo, LLC v. Industrack LLC*, 2016 WL 6611488, at *3 (E.D. Tex. Nov. 9, 2016) (quoting *Daubert*, 509 U.S. at 596). The Court has also considered and rejected Motorola's other criticisms concerning Mr. Weinstein's application of settlement discounts to the Samsung rate, for example, its argument that the Samsung agreement

does not contain any discounts to be adjusted for. Mr. Weinstein has provided a clear statement in his report explaining his opinion that the Samsung rate has non-itemized settlement discounts, an opinion that can be rigorously cross-examined. Motorola also asserts that the existence of a FRAND obligation precludes any adjustment to the Samsung license's effective royalty rate to account for the hypothetical negotiation's infringement and validity assumptions. However, it cites no persuasive authority holding that an expert may not adjust FRAND royalty rates to account for the hypothetical negotiation's assumption of infringement and validity.

All of Motorola's criticisms regarding Mr. Weinstein's opinion on settlement and invalidity discounts are logical, but they do not justify exclusion under *Daubert* before trial. They can be easily understood by a jury and go to the weight and credibility of Mr. Weinstein's testimony, not its admissibility, making it improper for the Court to exercise its "gatekeeper" role, lest it substitute its own judgment for the jury's. Accordingly, the Court will not exclude Mr. Weisntein's testimony on concerning settlement and invalidity discounts.

***Second***, Motorola argues that Mr. Weinstein's five cent adjustments upward for certain *Georgia-Pacific* factors are arbitrary and unreliable. After starting with a per unit starting royalty rate from the Samsung license and adjusting that starting rate for litigation risks and costs, Mr. Weinstein further adjusts the per unit royalty by adjusting the royalty rate in five cent increments using the *Georgia-Pacific* framework. Motorola argues that Mr. Weinstein fails to substantiate why five cents is a reasonable value to apply to the hypothetical reasonable royalty rate.

Again, Motorola's criticism goes to the weight and credibility of Mr. Weinstein's testimony, not admissibility. A reasonable royalty analysis "necessarily involves an element of approximation and uncertainty," *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009), and accordingly "[m]athematical precision is not required." *Whitserve, LLC v.*

*Computer Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012). What is required at the *Daubert* stage is that the expert explain "why and generally to what extent the particular factor impacts the royalty calculation is needed." *Id.* Mr. Weinstein does this. The Court generally agrees with SLC that Mr. Weinstein provides a detailed analysis to account both for his upward and downward adjustments to the royalty rate under *Georgia-Pacific*. (*See* Dkt. No. 310 at 13.) Mr. Weinstein does not use the same five cent adjustment per factor—for Factors 8, 9, and 10 he reduces the hypothetical royalty rate by a total ten cents. But even if Mr. Weinstein did weigh the adjustments to each factor the same way, *i.e.*, he did not detail whether certain factors weighed more heavily than others, his approach passes muster under *Daubert*. At bottom, supported by hundreds of paragraphs in his report, Mr. Weinstein analyzes *Georgia-Pacific* Factors 1, 2, 7, 8, 9, 10, and 11 to conclude that a net increase of ten cents to the hypothetical royalty is warranted. The Court has reviewed Mr. Weinstein's report and finds his ultimate *Georgia-Pacific* factor adjustments to be well-supported by his analysis, with the exception of Factor 7 below.

***Third***, Motorola challenges Mr. Weinstein's reliance on rates Motorola stated were appropriate FRAND rates for its own cellular technology. Georgia-Pacific Factor 2 contemplates adjustments based on "rates paid by the licensee for use of other patents." *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Motorola objects to Mr. Weinstein's use of rates Motorola charges because such rates are not "rates ***paid***" by Motorola.

Ultimately, Motorola's argument can be easily rejected because it "rests on an incorrect premise," *i.e.*, that an expert cannot consider evidence that does not explicitly fall within the *Georgia-Pacific* framework. *Parthenon Unified Memory Architecture LLC v. Apple Inc*., No. 2:15-CV-621-JRG-RSP, 2016 WL 7670833, at *1 (E.D. Tex. Sept. 21, 2016). Such notion has no support in the law. *Id.*; *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1230 (Fed. Cir. 2014)

("[W]e have never described the *Georgia–Pacific* factors as a talisman for royalty rate calculations."); *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012) ("We do not require that witnesses use any or all of the *Georgia–Pacific* factors when testifying about damages in patent cases."). The real question is whether rates charged by Motorola is relevant evidence to the hypothetical negotiation. The Court finds that Mr. Weinstein's report adequately explains the relevance of this evidence. Accordingly, even if evidence of FRAND rates Motorola charges for its own cellular technology may not explicitly fall within Factor 2 by its express terms, it is neither irrelevant nor unreliable evidence. Therefore, it should not be excluded.

*Fourth*, Motorola argues that Mr. Weinstein improperly "double-count[s]" for the increased duration of the hypothetical royalty rate. Here, the Court agrees. Applying *Georgia-Pacific* factor 7, Mr. Weinstein adjusts the hypothetical royalty rate upward by 5 cents to account for the fact that they hypothetical license would be 2.5 years longer than the Samsung license. However, he also opines that the hypothetical license would have resulted in a running royalty, as opposed to a lump sum. A running royalty supposes that the licensee will pay a per unit royalty. Without additional facts or testimony, a running royalty necessarily accounts for any longer duration through an increased royalty base.

SLC presents no facts to suggest that in this case, an increased royalty base does not already fully incorporate any adjustment to be made under Factor 7. SLC argues that the hypothetical license would provide ***longer*** and ***earlier*** access to the patented technologies. (Dkt. No. 310 at 13; Dkt. No. 362 at 4.) First, the increased royalty base already accounts for the longer access. Second, SLC's argument that, in this case, there is additional value to earlier access to the patented technology is devoid of any factual support. SLC points to paragraphs 285 and 286 of Mr. Weinstein's report. The Court has reviewed those paragraphs, and they do not support SLC's

argument. Rather, they quite clearly state that Mr. Weinstein makes an upward adjustment to the hypothetical royalty rate "because the license rights valued by Samsung and Motorola (i.e. the license rights to the Patents-In-Suit) continue for 2.5 years longer under the hypothetical Motorola license than they do under the Samsung license." (Dkt. No. 268-2 at 168.) There is simply no reliable support in the record for SLC's notion that Motorola might pay more for earlier, guaranteed access to newer technology. In fact, such notion appears to be contradicted by other statements in Mr. Weinstein's report. *See* Dkt. No. 268-2 at 166 ("I have not identified any evidence that would cause me to adjust the financial terms of the agreement between Saint Lawrence and Samsung to account for the difference in the timing of the Samsung negotiation and the hypothetical negotiation.").

To be clear, the Court's determination here that Mr. Weinstein's royalty rate improperly double counts is not a broader statement that *Georgia-Pacific* Factor 7 is *per se* inapplicable to a running royalty as a matter of law. There may be circumstances in which an increased royalty base does not fully account for Factor 7. However, Plaintiff has not marshaled sufficient facts to show that such is the case here. That is its burden. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). For this reason, Plaintiff's argument that Motorola provides no legal of factual authority to support its assertion that Mr. Weinstein double counts, (Dkt. No. 310 at 16), also fails. The Court disagrees with Plaintiff, as explained above, but in any case, showing inadmissibility is not Motorola's burden—the burden of showing admissibility rests with the Plaintiff. *Moore*, 151 F.3d at 276. Plaintiff has not met its burden and accordingly, Mr. Weinstein may not testify that an additional 2.5 years on the hypothetical license warrants an increase of 5 cents in his calculated running royalty.

*Fifth*, Motorola challenges Mr. Weinstein's discussion of other SLC licenses negotiated in the context of litigation in Germany. (Dkt. No. 268 at 17–18.) According to Motorola, these licenses are unreliable indicators of a FRAND royalty because they are "tainted by the coercive environment of patent litigation," specifically, the threat of an injunction in Germany. (*Id.*) (citing *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012).) The Court does not find Motorola's challenge meritorious. Mr. Weinstein does not use these licenses as a starting point for his opinion. Rather, he uses these additional licenses to justify an adjustment of the hypothetical royalty rate. In doing so, he explicitly takes into account how an injunction could place have placed pressure on the licensees and affected the rates of these additional licenses. As with many of its other challenges, Motorola's argument goes to the weight and not admissibility of the testimony.

## CONCLUSION

For the reasons stated herein, the Motion (Dkt. No. 268) is **GRANTED-IN-PART**. The Motion is **GRANTED** with respect to opinions that the royalty rate should be increased by five cents to account for the fact that the Motorola license would be 2.5 years longer. In all other respects, the Motion is **DENIED**.

**So ORDERED and SIGNED this 21st day of February, 2017.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE